# In the United States Bankruptcy Court
# for the
# Southern District of Georgia
# Savannah Division

FILED
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Savannah, Georgia
By DReese at 4:43 pm, Mar 10, 2017

| | |
|---|---|
| In the matter of: ) | |
| ) | Chapter 13 |
| ROSHAWN OUTLER NICHOLSON, ) | |
| ) | Number 16-40668-EJC |
| *Debtor.* ) | |
| ) | |
| ROSHAWN OUTLER NICHOLSON ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | Adversary |
| v. ) | |
| ) | Number 16-04038-EJC |
| WELLS FARGO BANK, N.A.; and ) | |
| PIP-EAST, LLC ) | |
| ) | |
| *Defendants.* ) | |

## OPINION ON DEFENDANTS' MOTIONS TO DISMISS ADVERSARY PROCEEDING

The day after the Debtor filed her Chapter 13 bankruptcy petition, Defendant Wells Fargo Bank, N.A. ("Wells Fargo") conducted a non-judicial foreclosure of certain real property located at 4 Blue Gill Lane, Pooler, Georgia 31322 (the "Residence"). This property (which serves as the Debtor's marital residence) was owned solely by the Debtor's husband, and he alone executed the note and Security Deed for this property. PIP-West, LLC purchased the Residence at the foreclosure sale, and Defendant PIP-East, LLC (successor by merger to PIP-West, LLC) subsequently filed a dispossessory action. Despite the fact that the Debtor had no title to the property, she claims an equitable interest such that the filing of her

bankruptcy petition should have prevented Wells Fargo's post-petition foreclosure.

On September 14, 2016, the Debtor filed this adversary proceeding (adv. dckt. 1) seeking a judgment setting aside the foreclosure sale and an award for damages pursuant to 11 U.S.C. § 362(k) for the Defendants' willful violations of the automatic stay. On October 25, 2016, the Debtor amended her complaint[1], as a matter of right, to add factual allegations related to her stay violation claim. (Dckt. 17). Pending before the Court are the Defendants' Motions to Dismiss the Debtor's complaint (the "Motions to Dismiss[2]") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Federal Rules"). (Adv. Dckts. 22, 23). The Defendants argue that the Debtor's complaint fails to state a claim for relief under 11 U.S.C. § 362(k) because it does not allege that the Debtor held a protectable interest in the Residence at the time she filed for bankruptcy. For the reasons set forth below, the Court will grant both Motions to Dismiss.

## I. JURISDICTION

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by then Chief Judge Anthony A. Alaimo on July 13, 1984. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(1).

---

[1] All references to the Debtor's "complaint" in this opinion refer to the Debtor's Amended Complaint, which is adversary docket 17.

[2] The Defendants filed Motions to Dismiss pursuant to Federal Rule 12(b)(6) (adv. dckts. 5, 11) prior to the Debtor amending her complaint. However, upon the filing of the Debtor's Amended Complaint (dckt. 17), both defendants filed renewed Motions to Dismiss (adv. dckts. 22, 23), which are currently before the Court.

AO 72A
(Rev. 8/82)

2

## II. FACTS[3]

### A. Husband's Purchase of the Residence

On or about August 6, 2011, the Debtor married her current husband, Ronnie Nicholson, Jr. (Adv. Dckt. 17, ¶ 10). Shortly after their marriage, on August 30, 2011, the Debtor's husband purchased the Residence and placed title to the property solely in his name[4]. (Adv. Dckt. 5-2). To fund the purchase, Mr. Nicholson obtained a loan from SWBC Mortgage Corporation ("SWBC") and executed a Security Deed in favor of SWBC, as collateral. (Adv. Dckt. 5-3). The Debtor is not a grantor on the Security Deed[5], nor is she an obligor on the underlying note. (Adv. Dckt. 17, Ex. A).

### B. Debtor's Contributions to Maintenance of the Residence

It is undisputed that the Debtor did not contribute any funds towards a down payment on the Residence. However, the Debtor has regularly contributed funds for the monthly mortgage payments and for the repairs and maintenance of the property. (Adv. Dckt. 17, ¶ 11, 12). In fact, since Mr. Nicholson's arrest in January 2016, the Debtor has borne the costs of any monthly mortgage payments, repairs, and improvements concerning the

---

[3] Where (as here) the pleadings refer to agreements and other documents, it is proper for the Court to consider the documents as part of the complaint in ruling on motions to dismiss. *Horne v. Potter*, 392 Fed. Appx. 800, 802 (11th Cir. 2010) (noting that it is proper to consider documents attached to the complaint or incorporated by reference, as well as any undisputed documents attached to the motions to dismiss that are central to the debtor's claim). In addition, the Court may consider matters of which judicial notice may be taken. *Id.*

[4] The Special Warranty Deed by which the property was conveyed identifies the sole grantee as Ronnie Nicholson, Jr. (Adv. Dckt. 5-2).

[5] The Security Deed lists the sole grantor as "Ronnie Nicholson Jr, an unmarried man." (Adv. Dckt. 5-3).

AO 72A
(Rev. 8/82)

3

Residence[6]. (Adv. Dckt. 17, ¶ 14, 16).

### C. The Foreclosure Proceedings

On May 3, 2016, Wells Fargo[7] commenced a non-judicial foreclosure of the Residence and sold the property to PIP West, LLC for $85,000.00. (Adv. Dckt. 17, Ex. B). Wells Fargo conveyed title to PIP West, LLC by way of a Deed Under Power recorded on June 3, 2016 in the real property records of Chatham County, Georgia. *Id.* After the foreclosure sale, PIP East (successor by merger to PIP West, LLC) initiated a dispossessory action against Mr. Nicholson[8] in the Magistrate Court of Chatham County. (Adv. Dckt. 17, ¶ 27). On August 9, 2016, the Debtor filed a Notice of Stay in the dispossessory action, which provided notice[9] to PIP East of the Debtor's instant Chapter 13 bankruptcy case. (Adv. Dckt. 17, Ex. C).

### D. The Debtor's Bankruptcy

On May 2, 2016, one-day prior to Wells Fargo's foreclosure sale of the Residence, the Debtor filed her Chapter 13 bankruptcy petition. (Dckt. 1). In her schedules,

---

[6] As a result of Mr. Nicholson's arrest and absence from the Residence, the Debtor and Mr. Nicholson have not been living together since January 2016. (Adv. Dckt. 17, ¶ 15).

[7] SWBC assigned the Security Deed and underlying note to Wells Fargo on September 24, 2014. (Adv. Dckt. 5-4).

[8] The Debtor is not a named defendant in the Dispossessory Action.

[9] After receiving notice of the Debtor's bankruptcy, PIP East filed a Motion for Relief (dckt. 29) seeking relief from the automatic stay to continue prosecution of the Dispossessory Action or, in the alternative, to have this Court retroactively annul the automatic stay and validate Wells Fargo's foreclosure sale. Because the Court finds that the Residence is not protected by the automatic stay in this case, the Court will issue an order denying PIP East's Motion for Relief as moot.

the Debtor indicated that she held a one-half[10] equitable interest in the Residence. In addition, she listed Wells Fargo as a creditor holding a claim secured by the Residence, notwithstanding that she was not liable for that debt. *Id.* On August 11, 2016, the Debtor's Chapter 13 plan was confirmed without objection by either Defendant. (Dckt. 27). The Debtor's plan, as confirmed, proposes to cure an estimated $13,000.00 pre-petition arrearage claim held by Wells Fargo. (Dckt. 2). The only claim filed by Wells Fargo is an unsecured claim for $258.94 representing an overdraft charge on a checking account. (Claims Register 4-1). In addition, the plan provides that the Debtor will continue to make post-petition payments directly to Wells Fargo on the debt secured by the Residence. *Id.* On December 25, 2016, the Chapter 13 Trustee filed his Report of Confirmation (dckt. 46) indicating that the only claim that would be paid to either Defendant was the $258.94 unsecured claim of Wells Fargo.

E. The Adversary Proceeding

On September 14, 2016, the Debtor initiated this adversary proceeding seeking damages for the Defendants' alleged violations of the automatic stay pursuant to 11 U.S.C. § 362(k). (Adv. Dckt. 1). In her complaint, the Debtor alleges that she held an equitable interest in the Residence under Georgia law, and thus the Defendants' actions taken with respect to the Residence violated the automatic stay of 11 U.S.C. § 362(a). (Adv. Dckt. 17, ¶ 13). The Debtor further alleges that Defendants took such actions despite having notice and actual knowledge of the Debtor's bankruptcy filing and her asserted interest in the Residence.

---

[10] In her Schedule "A," the Debtor lists a $54,464.00 equitable interest in the Residence, which is one-half of the $108,929.00 value listed for the entire property.

(Adv. Dckt. 17, ¶ 18-20, 27). In their Motions to Dismiss, the Defendants argue that the Debtor has failed to plead facts which establish that the Residence was "property of the estate" protected by the automatic stay. (Adv. Dckt. 22, 23). As a result, the Defendants contend that neither the foreclosure sale of the Residence nor the dispossessory action violated the automatic stay, and thus the Debtor's claim for damages under § 362(k) must be dismissed. *Id.*

### III. CONCLUSIONS OF LAW

A. Motion to Dismiss Standard

A complaint should be dismissed under Federal Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). Under Federal Rule 8(a)(2)[11], a plaintiff needs only to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In ruling on a motion to dismiss, the court must accept factual allegations as true and construe them in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 678. However, allegations in the form of legal conclusions, as well as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[11] Federal Rule 8(a)(2) is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7008.

misconduct alleged." *Id.* The rule "does not impose a probability requirement at the pleading stage," but instead "asks for more than a sheer possibility that a defendant has acted unlawfully." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint is insufficient under Federal Rule 8(a) because it has merely "alleged" but not "show[n] . . . that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

### B. The Debtor's 11 U.S.C. § 362(k) Claim

The Debtor contends that Wells Fargo's foreclosure sale of the Residence and PIP East's subsequent dispossessory action violated the automatic stay of 11 U.S.C. § 362(a). The Debtor further contends that such actions were willful, and therefore she is entitled to damages under § 362(k), which provides:

> (k) (1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k)(1). Accordingly, to state a claim under § 362(k) as to each Defendant, the Debtor must allege facts sufficient to establish the following three elements: (1) the actions taken by Defendant were in violation of the automatic stay; (2) the violation was willful; and (3) the violation caused actual damages. Here, the Debtor's Amended Complaint fails to state a claim under § 362(k) because the Debtor has no protectable interest in the Residence, and thus the Defendants' actions taken with respect to the Property did not violate the automatic stay of § 362(a).

### C. The Debtor Has No Protectable Interest in the Residence

Under 11 U.S.C. § 362(a), the filing of a bankruptcy petition triggers an automatic stay of, among other things, "any act to obtain possession of *property of the estate* or of property from the estate or to exercise control over *property of the estate*." 11 U.S.C. § 362(a)(3) (emphasis added). In this case, it is clear that the foreclosure sale and the subsequent dispossessory action constitute acts to obtain possession of or to exercise control over the Residence. However, the Defendants argue that the Debtor has failed to plead any facts which establish that the Residence was "property of the estate" protected by the automatic stay[12].

The Bankruptcy Code defines "property of the estate" to include "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). Although the question of what is "property of the estate" under § 541(a) is a federal question, property rights are created and defined by state law. *Butner v. United States*, 440 U.S. 48, 55 (1979). It is state law that determines whether the debtor's interest in property is sufficient to create a property right in the bankruptcy estate under § 541(a). *Id.*

The Debtor contends in her complaint that the Residence is "property of the estate" because it is marital property in which she is entitled to an equitable interest under Georgia Law. Recognizing that the property interests included under § 541(a) are exceedingly broad, the Debtor equates her *potential* claim to an equitable division of property in a divorce

---

[12] In their Motions to Dismiss, the Defendants argue that the Debtor has no equitable interest in the Residence by way of an express or implied trust. The Court finds it unnecessary to address these arguments because the Debtor's complaint does not contain any allegations of an express or implied trust, nor has the Debtor attempted to make such an argument.

action that has never been filed to an equitable interest sufficient to be included in her bankruptcy estate under § 541(a) and protected by the automatic stay under § 362(a). The Court disagrees.

The concept of equitable division of property in divorce (or suits for separate maintenance) has been addressed by numerous Georgia court decisions since the seminal case of *Stokes v. Stokes*, 246 Ga. 765 (1980). Georgia law recognizes both marital property (subject to equitable division) and non-marital, or separate property, that is not subject to equitable division.

> Only the real and personal property and assets acquired by the parties during the marriage are subject to equitable division. A property interest brought to the marriage by one of the marital partners is a non-marital asset and it is not subject to equitable division, since it was not generated by the marriage. . . Property acquired during the marriage by either party by gift, inheritance, bequest, or devise remains the separate property of the party that acquired it (unless that property is converted into a marital asset by the actions of the recipient spouse); and it is not subject to equitable division unless there is an appreciation in value during the marriage due to spousal effort, either separately or in conjunction with the other spouse.

Dan E. McConaughey, *Georgia Divorce, Alimony, and Child Custody* § 12:3 (2016) (citations omitted).

In the present case, it appears undisputed that the Residence was acquired by the Debtor's husband during the marriage, although it was only a few weeks after the parties were married[13]. Accordingly, the Residence is marital property subject to equitable division under Georgia law. The Debtor alleges that she has regularly contributed to the mortgage

---

[13] Of course the acquisition of marital property can occur at the other extreme. In *Friedman*, the Georgia Supreme Court held that property acquired during the marriage, even after the parties separated, up to the date of divorce is subject to equitable division of property. *Friedman v. Friedman*, 259 Ga. 530 (1989).

payments and furnished funds used to repair and improve the Residence. In the context of an equitable division determination, those facts might persuade a state court to award the Debtor an interest in all or part of the Residence. However, the Debtor is not entitled to this potential interest in the Residence until the need for an equitable division arises, which occurs after or contemporaneously with the filing of a claim for divorce. *Owens v. Owens*, 248 Ga. 720, 721 (1982). Until then, the Debtor has no property rights, legal or equitable, in marital property that is solely owned by her husband. *Miller v. Fulton Cnty.*, 258 Ga. 882, 883 (1989) ("[N]o property rights are created in the assets of the marriage while the parties are still married."); *In re McFarland*, 2013 WL 5442406 at *6 (Bankr. S.D. Ga. Sept. 30, 2013) (J. Barrett) (finding that a debtor's wife has no equitable interest in property solely owned by the debtor during the parties' marriage), *aff'd* 619 Fed. Appx. 962, n. 4 (11th Cir 2015); *In re Frederes*, 141 B.R. 289, 291-92 (Bankr. W.D. N.Y. 1992) (applying New York law).

The complaint does not allege that the Debtor has divorced her husband or that a divorce claim was pending at the time she filed for bankruptcy. In fact, the complaint asserts that "Debtor was married to Ronnie Nicholson, Jr. on or about August 6, 2011 and has remained married to Mr. Nicholson at all time[s] since . . . ." (Adv. Dckt. 17, ¶ 10). Because the Debtor alleges that she is still married to Mr. Nicholson, the Debtor has yet to acquire any equitable interest in the Residence that might result from the equitable division of property, and thus it is not "property of the estate" protected by the automatic stay[14].

---

[14] The Debtor relies on *In re Elrod*, 91 B.R. 187 (Bankr. M.D. Ga. 1988) to support her contention that she holds an equitable interest in the Residence by virtue of her marriage. However, the Debtor's reliance on this case is misguided. In fact, as this Court holds, the court in *Elrod* recognized that the non-owner spouse's equitable interest in marital property vests

AO 72A
(Rev. 8/82)

10

Accordingly, the Debtor's complaint does not plead a cause of action against either Defendant under § 362(k) because their actions taken with respect to the Residence were not in violation of the automatic stay.

D. <u>The Debtor's Res Judicata Argument</u>

The Debtor argues that pursuant to 11 U.S.C. § 1327(a), the Defendants are bound by the provisions of her confirmed Chapter 13 plan, which treats[15] the Residence as property of the Debtor's estate. Accordingly, the Debtor contends that confirmation of her plan precludes the Defendants from disputing the validity of her interest in the Residence. The Debtor's argument is unavailing.

Section 1327(a) provides that "the provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." According to the Bankruptcy Code, a "creditor" is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10). In this case, the Court is unaware of any set of facts that would establish PIP East as a creditor of the Debtor. Not only does PIP East have no claim against the Debtor, but its relationship with the Debtor, to the extent there is one, did not arise until after she filed her bankruptcy petition. Accordingly, the Court finds that PIP East is not a "creditor," and

---

upon the filing of a divorce action. 91 B.R. at 189.

[15] The Debtor's confirmed plan (dckt. 2) does not expressly identify the Residence, but alludes to the treatment of Wells Fargo as follows: 1) the Debtor will make post-petition monthly payments of $699.08 according to the note held by Wells Fargo; and 2) the Debtor will make cure payments to Wells Fargo on any pre-petition arrearage, which she estimates as "Allow as filed – $13,000.00." Wells Fargo filed no arrearage claim.

thus is not bound by the provisions of the Debtor's confirmed plan under § 1327(a).

The Court recognizes that Wells Fargo is a "creditor" of the Debtor, but this is based solely on its unsecured claim arising from an overdraft charge on a checking account held by the Debtor. It is an unhappy coincidence that the Debtor maintained a checking account with the same bank to whom her husband's mortgage was transferred. Notwithstanding this fact, the Court finds that Wells Fargo's status as an unsecured creditor should not bind it to the Debtor's plan provisions related to the Residence. It is undisputed that the Debtor is not an obligor on the note held by Wells Fargo, and thus is not liable for such debt. Accordingly, Wells Fargo is not a creditor of the Debtor as it relates to the note, and thus cannot be bound by the Debtor's plan provisions which attempts to address such debt.

Even if Wells Fargo was a "creditor" with respect to the Residence, the Court finds that it is not bound by a plan provision which attempts to establish an interest in property that the Debtor did not have on the petition date. The effect of section 1327(a) is such that "an order confirming a Chapter 13 plan is res judicata as to all justiciable issues which were or could have been decided at the confirmation hearing." *In re Clark*, 172 B.R. 701, 703 (Bankr. S.D. Ga. Sept. 19, 1994) (J. Walker). However, the preclusive effect of a confirmed plan only goes so far. As the court in *Winters Nat'l Bank & Trust Co. v. Simpson* held:

> A Chapter 13 plan may not provide for disposition of property which is not property of the estate as defined in 11 U.S.C. § 541. The fact of plan confirmation cannot bind a property owner disposing of his property rights when such property is not within the Court's vested jurisdiction.

26 B.R. 351, 354 (Bankr. S.D. Ohio 1982).

Likewise, the Debtor's argument that her confirmed plan precludes the Defendants from disputing her interest in the Residence is without merit. It is arguably true that the Debtor's confirmed plan treats the Residence as the Debtor's property, but only to the extent she proposes to pay the mortgage directly and to fund an arrearage claim which Wells Fargo understandably never filed. However, this proposed plan treatment is irrelevant because the Residence did not become property of the estate upon the filing of the Debtor's bankruptcy, and thus it is not property within the Court's vested jurisdiction. *Estep v. Fifth Third Bank of N.W. Ohio (In re Estep)*, 173 B.R. 126 (Bankr. N.D. Ohio 1994).; *Winters*, 26 B.R. at 354. Accordingly, the Court finds that the Defendants cannot be bound by a confirmed plan that improperly attempts to bring property, in which the Debtor had no interest on the petition date, into her bankruptcy estate. *See Estep*, 173 B.R. at 131 (rejecting debtor's argument that the confirmation of his plan is res judicata as to whether a lease in which the debtor had no interest in was property of the estate).

## IV. CONCLUSION

The Debtor filed this adversary proceeding seeking damages for the Defendants' alleged violations of the automatic stay provisions of 11 U.S.C. § 362. However, the Court finds that the Debtor did not have an interest in the Residence at the time she filed for bankruptcy, and thus the Residence was not protected by the automatic stay. Accordingly, the Court will grant Defendants' Motions to Dismiss for failure to state a claim upon which

relief can be granted under Federal Rule of Civil Procedure 12(b)(6). A separate order will be entered contemporaneously with this Opinion.

Dated at Savannah, Georgia this 10th day of March, 2017

_____
Edward J. Coleman, III, Judge
United States Bankruptcy Court
Southern District of Georgia