# In the United States Bankruptcy Court
## for the
### Southern District of Georgia
### Savannah Division

**FILED**
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Savannah, Georgia
By DReese at 6:13 pm, Sep 29, 2017

In the matter of: )
)
ROSHAWN OUTLER NICHOLSON, )
)
*Debtor.* )
)

Chapter 13

Number <u>16-40668-EJC</u>

_____

ROSHAWN OUTLER NICHOLSON )
)
*Plaintiff,* )
)
v. )
)
WELLS FARGO BANK, N.A.; and )
PIP-EAST, LLC )
)
*Defendants.* )

Adversary

Number <u>16-04038-EJC</u>

## OPINION ON DEFENDANT'S MOTION FOR SANCTIONS

The Court previously entered an Order granting both Defendants' motions to dismiss this adversary proceeding, finding that the Plaintiff's amended complaint was so deficient that it could not pass muster under Rule 12(b)(6) standards. Now pending before the Court is the Motion for Sanctions filed by Defendant PIP-East, LLC ("PIP-East"), which requires the Court to determine whether the Plaintiff's claims and legal theories were so meritless that sanctions should be imposed pursuant to Federal Rule of Bankruptcy Procedure 9011. To that end, it is necessary to revisit the factual and procedural background of this case.

The day after the Debtor filed her Chapter 13 bankruptcy petition, Defendant Wells Fargo Bank, N.A. ("Wells Fargo") conducted a non-judicial foreclosure of certain real property located at 4 Blue Gill Lane, Pooler, Georgia 31322 (the "Residence"). This property (which served as the Debtor's marital residence) was owned solely by the Debtor's husband, and he alone executed the note and Security Deed for this property. PIP-West, LLC ("PIP-West") purchased the Residence at the foreclosure sale, and PIP-East (successor by merger to PIP-West) subsequently filed a dispossessory action, but only against the Debtor's husband. Despite the fact that the Debtor had no title to the property, she claimed an "equitable interest" such that the filing of her bankruptcy petition should have prevented Wells Fargo's post-petition foreclosure and PIP-East's later dispossessory action.

On September 14, 2016, the Debtor filed this adversary proceeding (adv. dckt. 1), alleging the Defendants willfully violated the automatic stay. The Debtor sought an award of damages pursuant to 11 U.S.C. § 362(k) and sought title to the Residence. On October 25, 2016, the Debtor amended her complaint[1], as a matter of right, to add factual allegations related to her stay violation claim. (Dckt. 17). The Defendants filed timely Motions to Dismiss the Debtor's complaint (the "Motions to Dismiss[2]") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Federal Rules"). (Adv. Dckts. 22, 23). The Defendants argued that the Debtor's complaint failed to state a claim for relief under 11 U.S.C. § 362(k)

---

[1] All references to the Debtor's "complaint" in this opinion refer to the Debtor's Amended Complaint, which is adversary docket 17.

[2] The Defendants filed Motions to Dismiss pursuant to Federal Rule 12(b)(6) (adv. dckts. 5, 11) prior to the Debtor amending her complaint. However, upon the filing of the Debtor's Amended Complaint (dckt. 17), both defendants filed renewed Motions to Dismiss (adv. dckts. 22, 23).

AO 72A
(Rev. 8/82)

because it did not allege that the Debtor held a protectable interest in the Residence at the time she filed for bankruptcy. As more fully described below, the Court granted those Motions to Dismiss on March 10, 2017. (Adv. Dckt. 31). Thereafter, Defendant PIP-East filed the present Motion for Sanctions pursuant to Rule 9011 (Adv. Dckt. 36). For the reasons set forth below, the Court will deny PIP-East's Motion.

## I. JURISDICTION

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by then Chief Judge Anthony A. Alaimo on July 13, 1984. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(1).

## II. FACTS[3]

### A. Husband's Purchase of the Residence

On or about August 6, 2011, the Debtor married her current husband, Ronnie Nicholson, Jr. (Adv. Dckt. 17, ¶ 10). Shortly after their marriage, on August 30, 2011, the Debtor's husband purchased the Residence and placed title to the property solely in his name[4]. (Adv. Dckt. 5-2). To fund the purchase, Mr. Nicholson obtained a loan from SWBC Mortgage Corporation ("SWBC") and executed a Security Deed in favor of SWBC, as

---

[3] As the Court noted in its opinion granting Defendants' Motions to Dismiss, where, as here, the pleadings refer to agreements and other documents, it is proper for the Court to consider the documents in ruling on a motion to dismiss. *Horne v. Potter*, 392 Fed. Appx. 800, 802 (11th Cir. 2010). In addition, the Court may consider matters of which judicial notice may be taken. *Id.* To the extent that those same documents might inform the Court's decision on the instant Motion for Sanctions, the Court will consider them.

[4] The Special Warranty Deed by which the property was conveyed identifies the sole grantee as Ronnie Nicholson, Jr. (Adv. Dckt. 5-2).

collateral. (Adv. Dckt. 5-3). The Debtor is not a grantor on the Security Deed[5], nor is she an obligor on the underlying note. (Adv. Dckt. 17, Ex. A).

### B. Debtor's Contributions to Maintenance of the Residence

It is undisputed that the Debtor did not contribute any funds towards a down payment on the Residence. However, the Debtor had regularly contributed funds for the monthly mortgage payments and for the repairs and maintenance of the property. (Adv. Dckt. 17, ¶ 11, 12). In fact, since Mr. Nicholson's arrest in January 2016, the Debtor had borne the costs of any monthly mortgage payments, repairs, and improvements concerning the Residence[6]. (Adv. Dckt. 17, ¶ 14, 16).

### C. The Foreclosure Proceedings

On May 3, 2016, one day after the Debtor filed bankruptcy, Wells Fargo[7] conducted[8] a non-judicial foreclosure of the Residence and sold the property to PIP-West for $85,000.00. (Adv. Dckt. 17, Ex. B). Wells Fargo conveyed title to PIP-West by way of a Deed Under Power recorded on June 3, 2016 in the real property records of Chatham County, Georgia. *Id.* After the foreclosure sale, PIP-East (successor by merger to PIP-West) initiated

---

[5] The Security Deed lists the sole grantor as "Ronnie Nicholson Jr, an unmarried man." (Adv. Dckt. 5-3).

[6] As a result of Mr. Nicholson's arrest and absence from the Residence, the Debtor and Mr. Nicholson have not been living together since January 2016. (Adv. Dckt. 17, ¶ 15).

[7] SWBC assigned the Security Deed and underlying note to Wells Fargo on September 24, 2014. (Adv. Dckt. 5-4).

[8] The statutorily required advertising took place prior to May 3. See O.C.G.A. § 9-13-140(a).

a dispossessory action against Mr. Nicholson[9] in the Magistrate Court of Chatham County. (Adv. Dckt. 17, ¶ 27). On August 4, 2016, the Debtor filed a Notice of Stay[10] in the dispossessory action, which provided notice[11] to PIP-East of the Debtor's instant Chapter 13 bankruptcy case.[12] (Adv. Dckt. 17, Ex. C).

D. The Debtor's Bankruptcy

On May 2, 2016, one-day prior to Wells Fargo's foreclosure sale of the Residence, the Debtor filed her Chapter 13 bankruptcy petition. (Dckt. 1). In her schedules, the Debtor indicated that she held a one-half[13] equitable interest in the Residence. In addition, she listed Wells Fargo as a creditor holding a claim secured by the Residence, notwithstanding that she was not liable for that debt. *Id.* On August 11, 2016, the Debtor's

---

[9] The Debtor is not a named defendant in the dispossessory action.

[10] In the Notice of Stay, the Debtor disclosed that she filed a Chapter 13 bankruptcy petition in this Court and listed real property at 4 Blue Gill Lane, Pooler, Georgia 31322 as property of her bankruptcy estate. The Debtor further represented that Wells Fargo was given prompt notice of the bankruptcy by the Clerk and by the Debtor, and that Wells Fargo acknowledged receipt of such notice and did not object to the Debtor's proposed Chapter 13 plan. (Adv. Dckt. 17, p. 29-30).

[11] After receiving notice of the Debtor's bankruptcy, PIP-East filed a Motion for Relief from the automatic stay to continue prosecution of the dispossessory action or, in the alternative, for retroactive annulment of the automatic stay and validation of Wells Fargo's foreclosure sale. (Dckt. 29). Because the Court found that the Residence is not protected by the automatic stay in this case, the Court issued an order denying PIP-East's Motion for Relief as moot. (Dckt. 48).

[12] To the extent PIP-East seeks sanctions for the Debtor's representations in the dispossessory action, this Court has no authority to impose sanctions for actions taken by the Debtor's counsel in another court. *See Transamerica Commercial Fin. Corp. v. Banton, Inc.*, 970 F.2d 810, 815-16 (11th Cir. 1992) (citing *Schoenberger v. Oselka*, 909 F.2d 1086 (7th Cir. 1990)).

[13] In her Schedule "A," the Debtor lists a $54,464.00 equitable interest in the Residence, which is one-half of the $108,929.00 value listed for the entire property.

Chapter 13 plan was confirmed without objection by either Defendant. (Dckt. 27). The Debtor's plan, as confirmed, proposed to cure an estimated $13,000.00 pre-petition arrearage claim held by Wells Fargo. (Dckt. 2). However, the only claim filed by Wells Fargo was an unsecured claim for $258.94 representing an overdraft charge on a checking account. (Claims Register 4-1). In addition, the plan provided that the Debtor would continue to make post-petition payments directly to Wells Fargo on the debt (owed solely by the Debtor's husband) secured by the Residence. *Id.* On December 25, 2016, the Chapter 13 Trustee filed his Report of Confirmation (dckt. 46) indicating that the only claim that would be paid by the Trustee to either Defendant was the $258.94 unsecured claim of Wells Fargo.

E. The Adversary Proceeding

On September 14, 2016, the Debtor initiated this adversary proceeding seeking damages for the Defendants' alleged violations of the automatic stay pursuant to 11 U.S.C. § 362(k) and seeking "[t]hat Debtor's debt otherwise owed to [Defendants] be extinguished and Defendants be order [sic] to deliver title to the subject real property to Debtor." (Adv. Dckt. 1, p. 8). In her Complaint, the Debtor alleged that she held an equitable interest in the Residence under Georgia law, and thus the Defendants' actions taken with respect to the Residence violated the automatic stay of 11 U.S.C. § 362(a). (Adv. Dckt. 17, ¶ 13). The Debtor further alleged that Defendants took such actions despite having notice and actual knowledge of the Debtor's bankruptcy filing and her asserted interest in the Residence. (Adv. Dckt. 17, ¶ 18-20, 27). In their Motions to Dismiss, the Defendants argued that the Debtor had failed to plead facts which establish that the Residence was "property of the estate"

protected by the automatic stay. (Adv. Dckt. 22, 23). As a result, the Defendants contended that neither the foreclosure sale of the Residence nor the dispossessory action violated the automatic stay, and thus the Debtor's claim for damages under § 362(k) should be dismissed. *Id.* On March 10, 2017, the Court granted Defendants' Motions to Dismiss. (Adv. Dckt. 31).

F.   Voluntary Dismissal of Underlying Chapter 13 Case.

Having unsuccessfully attempted to set aside the foreclosure of the property which she occupied as her marital residence, the Debtor filed a voluntary dismissal of her underlying Chapter 13 case. (Dckt. 52). During the brief period that the Chapter 13 case remained active, no creditors were paid any dividend. (Dckt. 55).

G.   Motion for Sanctions

By an exchange of emails in August of 2016, PIP-East made an effort to persuade the Debtor's counsel not to pursue the adversary proceeding. In an email to PIP-East's counsel dated August 4, 2016, and perhaps earlier by telephone, the Debtor's counsel gave notice of the Debtor's bankruptcy and also sought confirmation that the dispossessory action would be dismissed. (Adv. Dckt. 36, p. 13). On August 8, 2016, the following email exchange took place between the Debtor's counsel and PIP-East's counsel:

> **Debtor's counsel (10:01 AM):** The docket below shows that after I emailed and spoke with you the request to evict was apparently sent to the sheriff. Please confirm this was in error and that the eviction is not being prosecuted. The sheriff came to my client's door today with an eviction notice. She called very upset. Please see 11 USC 362 and 11 USC 1301. Without confirmation that eviction efforts have ceased, I'll have to file an adversary by close of business.

> **PIP-East's counsel (10:11 AM):** We had sent in the Writ request earlier last week before I heard from you. I'll have my paralegal call the Sheriff and cancel the eviction, and we won't proceed with it until receiving permission to do so from

the bankruptcy court. I have not found any case law to suggest that the foreclosure sale is bad simply because your client claimed an "equitable interest" in the property as part of her petition and chapter 13 plan. If you have any please provide it as soon as possible. I'm planning on filing a motion with the bankruptcy court later today.

**Debtor's counsel (10:25 AM):** That would provoke an adversary. See 11 U.S.C. § 541. If someone in your firm is familiar with bankruptcy, you really should talk with them.

**PIP-East's counsel (11:04 AM):** I am familiar with Section 541 and I've also spoken to another attorney that handles bankruptcy actions more frequently. And I am also familiar with the fact that the bankruptcy rules are an overlay of state law. Your client has to have a valid interest in the property under Georgia law. And simply by being the wife of the former borrower and title-holder of the property does not vest her with an "equitable interest" in the property. I searched the title records and found nothing that indicates your client holds any type of valid interest in the property. Furthermore, by simply claiming that she has an interest in the property and having a chapter 13 plan confirmed, again does not equate to an actual interest in the property. Under this argument, I could claim that I own the White House, file a chapter 13 plan, get it confirmed, and then I actually own the White House. Finally, I believe my client is a bona fide purchaser who took the property without notice of your client's alleged equitable lien.

**Debtor's counsel (11:09 AM):** It's marital property as I said on our call.

**PIP-East's counsel (11:26 AM):** My research says that is incorrect. And the Security Deed says that Mr. Nicholson is an "unmarried man" at the time he purchased the Property. Anyway, it sounds like we aren't going to be able to agree and I'll just need to file a motion with the Court. My paralegal did just get off the phone and has confirmed with the Sheriff that the eviction is stayed due to the bankruptcy filing.

(Adv. Dckt. 36, Exhibit A).

On October 17, 2016, the same day PIP-East filed its Motion to Dismiss the Adversary Proceeding, PIP-East's counsel wrote a letter to the Debtor's counsel and enclosed a draft of the Motion for Rule 9011 Sanctions. (Dckt. 36-1). In the letter, PIP-East's counsel stated that if the Debtor's counsel did not "take corrective action and dismiss the above-

8

referenced case," PIP-East would "be forced to file the motion [for sanctions] after the expiration of the safe harbor period" set forth in Rule 9011(c)(1)(A). (Adv. Dckt. 36-1). On October 25, 2016, the Debtor amended her complaint to add the following allegations: (1) that the Debtor had been married to her husband since August 6, 2011; (2) that the marital residence had been purchased on August 30, 2011; (3) that the Debtor contributed to monthly payments on the residence; (4) that the Debtor had paid household expenses when her husband was unemployed; (5) that the Debtor regularly had contributed funds for repairs and improvements to the residence; (6) that the Debtor and her husband had lived in a "state of separation" since the husband's arrest in January of 2016; and (7) that the Debtor had made all monthly payments on the residence and paid for all repairs and improvements to the residence since the husband's arrest. (Dckt. 17). Further, the Debtor argued that the residence was marital property subject to equitable division under Georgia law. *Id.* at p. 3.

On March 26, 2017, over five months later, PIP-East filed the instant Motion for Sanctions. PIP-East contends Rule 9011 requires the Court to impose sanctions against the Debtor and her counsel because her complaint (1) was legally and factually frivolous; and (2) was filed for an improper purpose.[14]

---

[14] In its Motion for Sanctions, PIP-East repeatedly asserts that Rule 9011 "mandates" sanctions, and thus the Court "is obligated" to impose sanctions on the Debtor and her counsel. (Adv. Dckt. 36). In support of this proposition, however, PIP-East relies on *Mike Ousley Prods., Inc. v. WJBJ-TV*, 952 F.2d 380, 382 (11th Cir. 1992), and *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 694 (11th Cir. 1995). Both cases were decided based on the Federal Rule 11 in effect prior to the 1993 amendments. *See Jones*, 49 F.3d at 694. The 1993 amendments made the imposition of sanctions discretionary rather than mandatory. *Matter of Generes*, 69 F.3d 821, 827 (7th Cir. 1995). Now, under Bankruptcy Rule 9011, sanctions are likewise discretionary. *In re Fazzary*, 530 B.R. 903, 910-11 (Bankr. M.D. Fla. 2015). However, these misstatements of law by PIP-East's counsel are not the focus of this opinion.

## III. CONCLUSIONS OF LAW

Not every case that is dismissed for failing to meet the standards of *Iqbal* and *Twombly* will result in the imposition of sanctions. "[M]otions to dismiss and motions for sanctions serve different purposes and are governed by different standards." *In re Miller*, 414 F. App'x 214, 217 (11th Cir. 2011). As such, "many arguments which might support a motion to dismiss would fail to provide a sufficient basis for a motion for sanctions." *Id.* at 218. The Court therefore finds it appropriate to compare the different standards.

### A. Motion to Dismiss Standard

A complaint should be dismissed under Federal Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). Under Federal Rule 8(a)(2)[15], a plaintiff needs only to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In ruling on a motion to dismiss, the court must accept factual allegations as true and construe them in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 678. However, allegations in the form of legal conclusions, as well as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The rule "does not impose a probability requirement at the pleading

---

[15]Federal Rule 8(a)(2) is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7008.

stage," but instead "asks for more than a sheer possibility that a defendant has acted unlawfully." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint is insufficient under Federal Rule 8(a) because it has merely "alleged" but not "show[n] . . . that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

## B. Rule 9011 Sanctions Standard

Federal Rule of Bankruptcy Procedure 9011 is modeled after and substantially identical to Federal Rule of Civil Procedure 11. *Glatter v. Mroz (In re Mroz)*, 65 F.3d 1567, 1572 (11th Cir. 1995). Therefore, courts frequently look to cases interpreting Federal Rule 11 when applying Bankruptcy Rule 9011. *Id.* "The purpose of Rule 9011 is to deter litigation abuse and unnecessary filings." *In re Addon Corp.*, 231 B.R. 385, 388 (N.D. Ga. 1999). The Rule does not function simply as a fee-shifting statute requiring the losing party to pay fees and costs. *In re Ryan*, 411 B.R. 609, 613 (Bankr. N.D. Ill. 2009).

Pursuant to Rule 9011(b), an attorney or unrepresented party who submits a "petition, pleading, written motion, or other paper" to the court certifies "that to the best of the person's knowledge, information, and belief," formed after a reasonable inquiry:

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bankr. P. 9011(b). In effect, Rule 11 provides two separate grounds for sanctions. *In re Armwood*, 175 B.R. 779, 788 (Bankr. N.D. Ga. 1994). The first is where a pleading is "frivolous, legally unreasonable or without factual foundation"; the second is where a pleading is "filed in bad faith or for an improper purpose." *Mroz*, 65 F.3d at 1572.

To determine whether a pleading is factually or legally frivolous, a court "must first determine whether the party's claim is objectively frivolous" and, second, "whether the person signing the document should have been aware that it was frivolous." *Mroz*, 65 F.3d at 1573. In other words, the court must ask whether a reasonable inquiry would have made the signer aware that the claim was frivolous. *Id.* A pleading is factually frivolous where the party "has absolutely no evidence" to support its position. *Id.* A pleading is legally frivolous where it is "clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d. Cir 1990). When there is some plausible basis, even a weak one, supporting the litigant's position, imposition of sanctions is inappropriate. *United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1117 (9th Cir. 2001).

To determine whether a pleading was filed for an improper purpose, the court must inquire whether the pleading was filed to vindicate the party's rights or for some other purpose. *In re Kunstler*, 914 F.2d 505, 518 (4th Cir. 1990). Rule 9011 prohibits the filing of a pleading for purposes of delay, harassment, or causing expense, even if the party's claim is otherwise colorable. *Ryan*, 411 B.R. at 613. Because direct evidence of a party's subjective purpose is rarely available, this is an objective inquiry. *In re Graffy*, 233 B.R. 894, 896 (Bankr. M.D. Fla. 1999).

C. The Debtor's 11 U.S.C. § 362(k) Claim

In her Amended Complaint, the Debtor claimed that both Wells Fargo's foreclosure sale of the Residence and PIP-East's subsequent dispossessory action constituted willful violations of the automatic stay of 11 U.S.C. § 362(a), and thus the Debtor was entitled to damages under § 362(k), which provides:

> (k) (1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k)(1). Accordingly, to state a claim under § 362(k) as to each Defendant, the Debtor was required to allege facts sufficient to establish the following three elements: (1) the actions taken by Defendant were in violation of the automatic stay; (2) the violation was willful; and (3) the violation caused actual damages.

Under 11 U.S.C. § 362(a), the filing of a bankruptcy petition triggers an automatic stay of, among other things, "any act to obtain possession of *property of the estate* or of property from the estate or to exercise control over *property of the estate*." 11 U.S.C.

§ 362(a)(3) (emphasis added). In this case, it was clear that the foreclosure sale and the subsequent dispossessory action constituted acts to obtain possession of or to exercise control over the Residence. However, the Defendants argued that the Debtor failed to plead any facts which established that the Residence was "property of the estate" protected by the automatic stay.

The Bankruptcy Code defines "property of the estate" to include "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). Although the question of what is "property of the estate" under § 541(a) is a federal question, property rights are created and defined by state law. *Butner v. United States*, 440 U.S. 48, 55 (1979). It is state law that determines whether the debtor's interest in property is sufficient to create a property right in the bankruptcy estate under § 541(a). *Id.*

The Debtor contended that the Residence was "property of the estate" because it was marital property in which she was entitled to an equitable interest under Georgia Law. Recognizing that the property interests included under § 541(a) are exceedingly broad, the Debtor equated her *potential* claim to an equitable division of property in a divorce action that was never filed to an equitable interest sufficient to be included in her bankruptcy estate under § 541(a) and protected by the automatic stay under § 362(a). The Court disagreed.

The concept of equitable division of property in divorce (or suits for separate maintenance) has been addressed by numerous Georgia court decisions since the seminal case of *Stokes v. Stokes*, 246 Ga. 765 (1980). Georgia law recognizes both marital property (subject to equitable division) and non-marital, or separate property, that is not subject to

equitable division.

> Only the real and personal property and assets acquired by the parties during the marriage are subject to equitable division. A property interest brought to the marriage by one of the marital partners is a non-marital asset and it is not subject to equitable division, since it was not generated by the marriage. . . Property acquired during the marriage by either party by gift, inheritance, bequest, or devise remains the separate property of the party that acquired it (unless that property is converted into a marital asset by the actions of the recipient spouse); and it is not subject to equitable division unless there is an appreciation in value during the marriage due to spousal effort, either separately or in conjunction with the other spouse.

Dan E. McConaughey, *Georgia Divorce, Alimony, and Child Custody* § 12:3 (2016) (citations omitted).

Here, it was undisputed that the Residence was acquired by the Debtor's husband during the marriage, although it was only a few weeks after the parties were married[16]. Accordingly, if a divorce action were pending during or before the Debtor's bankruptcy case, the Residence would have been marital property subject to equitable division under Georgia law. The Debtor alleged that she regularly contributed to the mortgage payments and furnished funds to repair and improve the Residence. In the context of an equitable division determination, those facts might have persuaded a state court to award the Debtor an interest in all or part of the Residence. However, the Debtor was not entitled to this potential interest in the Residence until the need for an equitable division arose after or contemporaneously with the filing of a claim for divorce. *Owens v. Owens*, 248 Ga. 720, 721 (1982). Until then, the Debtor had no property rights, legal or equitable, in marital

---

[16] Of course, the acquisition of marital property can also occur at the very end of a marriage. In *Friedman*, the Georgia Supreme Court held that property acquired during the marriage, even after the parties separated, up to the date of divorce is subject to equitable division of property. *Friedman v. Friedman*, 259 Ga. 530 (1989).

property that was solely owned by her husband. *Miller v. Fulton Cnty.*, 258 Ga. 882, 883 (1989) ("[N]o property rights are created in the assets of the marriage while the parties are still married."); *In re McFarland*, 2013 WL 5442406 at *6 (Bankr. S.D. Ga. Sept. 30, 2013) (J. Barrett) (finding that a debtor's wife has no equitable interest in property solely owned by the debtor during the parties' marriage), *aff'd* 619 Fed. Appx. 962, n. 4 (11th Cir 2015); *In re Frederes*, 141 B.R. 289, 291-92 (Bankr. W.D. N.Y. 1992) (applying New York law).

The complaint did not allege that the Debtor had divorced her husband or that a divorce claim was pending at the time she filed for bankruptcy. In fact, the complaint asserted that "Debtor was married to Ronnie Nicholson, Jr. on or about August 6, 2011 and has remained married to Mr. Nicholson at all time[s] since . . . ."[17] (Adv. Dckt. 17, ¶ 10). Because the Debtor alleged that she was still married to Mr. Nicholson, the Debtor had yet to acquire any interest in the Residence that might result from the equitable division of property, and thus it was not "property of the estate" protected by the automatic stay.[18] Accordingly, the Debtor's complaint did not plead a cause of action against either Defendant under § 362(k) because their actions taken with respect to the Residence were not in violation of the automatic stay, nor did she plead sufficient grounds to have the foreclosure sale set aside and title to the Residence awarded to her. In granting the Motions to Dismiss, the Court

---

[17] The Amended Complaint, however, did assert that the Debtor and her husband had "lived in a bonafide state of separation since January of 2016." (Adv. Dckt. 17, p. 4).

[18] The Debtor relied on *In re Elrod*, 91 B.R. 187 (Bankr. M.D. Ga. 1988) to support her contention that she held an equitable interest in the Residence by virtue of her marriage. However, the Debtor's reliance on this case was misguided. In fact, as this Court held, the court in *Elrod* recognized that the non-owner spouse's equitable interest in marital property vests upon the filing of a divorce action. 91 B.R. at 189.

AO 72A
(Rev. 8/82)

found the Debtor's Amended Complaint failed to state a claim under § 362(k) because the Debtor had no protectable interest in the Residence, and thus the Defendants' actions taken with respect to the Property did not violate the automatic stay of § 362(a).

## D. The Debtor's Res Judicata Argument

The Debtor also argued that pursuant to 11 U.S.C. § 1327(a), the Defendants were bound by the provisions of her confirmed Chapter 13 plan, which treated[19] the Residence as property of the Debtor's estate. Accordingly, the Debtor contended that confirmation of her plan precluded the Defendants from disputing the validity of her interest in the Residence. The Debtor's argument was unavailing and remains so.

Section 1327(a) provides that "the provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." According to the Bankruptcy Code, a "creditor" is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10). In this case, the Court found that no set of facts that would have established PIP-East as a creditor of the Debtor. Not only did PIP-East have no claim against the Debtor, but its relationship with the Debtor, to the extent there was one, did not arise until after she filed her bankruptcy petition. Accordingly, the Court found that PIP-East was not

---

[19] The Debtor's confirmed plan (Dckt. 2) did not expressly identify the Residence, but alluded to the treatment of Wells Fargo as follows: 1) the Debtor would make post-petition monthly payments of $699.08 according to the note held by Wells Fargo; and 2) the Debtor would make cure payments to Wells Fargo on any pre-petition arrearage, which she estimates as "Allow as filed – $13,000.00." Wells Fargo filed no arrearage claim.

a "creditor," and thus was not bound by the provisions of the Debtor's confirmed plan under § 1327(a).

The Court recognized that Wells Fargo was a "creditor" of the Debtor, but this was based solely on its unsecured claim arising from an overdraft charge on a checking account held by the Debtor. It was an unhappy coincidence that the Debtor maintained a checking account with the same bank to whom her husband's mortgage was transferred. Notwithstanding this fact, the Court found that Wells Fargo's status as an unsecured creditor did not bind it to the Debtor's plan provisions related to the Residence. It was undisputed that the Debtor was not an obligor on the note held by Wells Fargo, and thus was not liable for such debt. Accordingly, Wells Fargo was not a creditor of the Debtor as it related to the note, and thus could not be bound by the Debtor's plan provisions which attempted to address such debt.

Even if Wells Fargo were a "creditor" with respect to the Residence, the Court found that it was not bound by a plan provision which attempted to establish an interest in property that the Debtor did not have on the petition date. The effect of section 1327(a) is such that "an order confirming a Chapter 13 plan is res judicata as to all justiciable issues which were or could have been decided at the confirmation hearing." *In re Clark*, 172 B.R. 701, 703 (Bankr. S.D. Ga. Sept. 19, 1994) (J. Walker). However, the preclusive effect of a confirmed plan only goes so far. As the court in *Winters Nat'l Bank & Trust Co. v. Simpson* held:

> A Chapter 13 plan may not provide for disposition of property which is not property of the estate as defined in 11 U.S.C. § 541. The fact of plan confirmation cannot

bind a property owner disposing of his property rights when such property is not within the Court's vested jurisdiction.

26 B.R. 351, 354 (Bankr. S.D. Ohio 1982).

Likewise, the Debtor's argument that her confirmed plan precluded the Defendants from disputing her interest in the Residence was without merit. It was arguably true that the Debtor's confirmed plan treated the Residence as the Debtor's property, but only to the extent she proposed to pay the mortgage directly and to fund an arrearage claim which Wells Fargo understandably never filed. However, this proposed plan treatment was irrelevant because the Residence did not become property of the estate upon the filing of the Debtor's bankruptcy, and thus it was not property within the Court's vested jurisdiction. *Estep v. Fifth Third Bank of N.W. Ohio (In re Estep)*, 173 B.R. 126 (Bankr. N.D. Ohio 1994); *Winters*, 26 B.R. at 354. Accordingly, the Court found that the Defendants could not be bound by a confirmed plan that improperly attempted to bring property, in which the Debtor had no interest on the petition date, into her bankruptcy estate. *See Estep*, 173 B.R. at 131 (rejecting debtor's argument that the confirmation of his plan is res judicata as to whether a lease in which the debtor had no interest in was property of the estate).

E. PIP-East Was Not Required to Serve a Second Safe Harbor Notice

Before addressing the merits of the Motion for Sanctions, the Court must address the Debtor's argument that PIP-East was required to serve the Debtor with a second safe harbor notice. Pursuant to Bankruptcy Rule 9011(c)(1)(A), the moving party must serve its motion for sanctions on opposing counsel at least 21 days before filing the motion with the court. During this "safe harbor" period, "the offending party can avoid sanctions by

withdrawing or correcting the challenged document or position after receiving notice of the alleged violation." *In re Walker*, 532 F.3d 1304, 1308 (11th Cir. 2008).

Here, the Debtor appears to argue that because she filed an amended complaint during the safe harbor period, PIP-East was required to "send [an] additional Rule 9011 notice prior to filing the instant motion for sanctions months later and after the close of the case." (Dckt. 55, p. 3). The Court disagrees. Although the Debtor's Amended Complaint contained additional factual allegations, it did not substantively differ from the Debtor's original Complaint and did not cure the alleged defects therein. *Payman v. Mirza*, 82 F. App'x 826, 827-28 (4th Cir. 2003) (per curiam). Accordingly, PIP-East was not required to serve the Debtor with a second safe harbor notice.

F. The Debtor's Complaint Was Not Filed for an Improper Purpose

In its Motion for Sanctions, PIP-East contends the Debtor's Complaint was filed for an improper purpose and was both factually and legally frivolous. The Court finds the Debtor's Complaint was not filed for an improper purpose. PIP-East does not explicitly identify the alleged improper purpose but implies the Debtor sought to unnecessarily delay PIP-East's dispossessory action. PIP-East argues the Debtor's improper purpose can be inferred from (1) an August 8, 2017 email exchange in which the Debtor's counsel failed to produce any case law supporting the Debtor's position, and (2) the fact that Debtor's filing of this adversary proceeding delayed a scheduled hearing on PIP-East's motion for relief from the automatic stay in the underlying Chapter 13 case.

The Court finds these facts do not provide a sufficient basis to infer an

improper purpose on the Debtor's part. First, the Debtor's failure to cite supporting authority in an email exchange with opposing counsel, while possibly relevant to the issue of whether the Complaint was legally frivolous, does not warrant the imposition of sanctions.[20] The Debtor's position was based on *some* case law, which the Debtor cited in her Complaint. Second, to the extent the Debtor sought to delay the hearing on PIP-East's motion for relief from the stay, the Court finds the Debtor held an honest but mistaken belief that she held an equitable interest in her home and that PIP-East violated the automatic stay (however briefly) despite having received notice of the bankruptcy. Thus, the Debtor did not seek to unnecessarily delay PIP-East's motion for relief from the stay. *See In re Parikh*, 508 B.R. 572, 585 (Bankr. E.D.N.Y. 2014) ("[T]he delay or frustration to creditors must be unnecessary; delay and frustration alone are insufficient sanctions under Rule 9011(b)(1).").

G. The Debtor's Complaint Was Not Factually Frivolous

Next, PIP-East contends the Debtor's claim was factually frivolous because the Debtor "admits that PIP did not become aware of her bankruptcy filing until *August 9, 2016*." (Dckt. 36, p. 4) (emphasis added). Because this date was well after PIP-East acquired the Residence and initiated the dispossessory proceeding, PIP-East argues the Debtor had no factual basis to claim PIP-East willfully violated the automatic stay. The Court disagrees.

The emails attached to PIP-East's own Motion for Sanctions establish that PIP-East received notice of the Debtor's bankruptcy by August 4, 2016, five days earlier than

---

[20]PIP-East's counsel also did not cite supporting case law in the same email exchange but merely asserted "[m]y research says [the Debtor's claim regarding the Residence] is incorrect." (Dckt. 36, p. 10).

PIP-East now claims. (Dckt. 36, p. 13). Additionally, the electronic docket in the dispossessory action reflects a $25.00 "eviction fee" paid on August 7, 2016, three days after PIP-East received notice of the bankruptcy. (Dckt. 55, p. 20). According to the Declaration of PIP-East's manager, PIP-East's counsel sought a writ of possession on the same day Plaintiff's counsel filed a Notice of Stay in the dispossessory action, which was August 8, 2016. (Dckt. 54-1, p. 2). Moreover, the emails attached to PIP-East's Motion also show that on August 8, 2016, the Debtor's counsel informed PIP-East's counsel that the sheriff had just come to the Debtor's door with an eviction notice. (Dckt. 36, pp. 12-13). Thus, the Debtor's counsel had *some* basis to believe PIP-East was attempting to proceed with the dispossessory action after having received notice of the bankruptcy. In addition, all of the factual allegations regarding the Debtor's marriage, her contributions to the Residence, her separation from her husband, and the timing of the foreclosure sale are undisputed. Based on these facts, the Court finds the Debtor's complaint was supported by some evidence and thus not factually frivolous.

H. The Debtor's Complaint Was Not Legally Frivolous as to the Debtor's Interest in the Residence

Next, PIP-East contends the Debtor's claim that the PIP-East willfully violated the automatic stay was legally frivolous because the Debtor had no interest in the Residence. The Court disagrees. It is true that the Debtor's claim was based on a misapplication of the law. In the Complaint, the Debtor relied on *In re Elrod*, 91 B.R. 187, 189 (Bankr. M.D. Ga. 1988), for the proposition that a debtor's spouse holds an equitable interest in marital

property under Georgia law. Thus, the Debtor argued she had an equitable interest in the Residence, and PIP-East willfully violated the automatic stay by initiating a dispossessory action. As set forth above, however, the Debtor's counsel misread the *Elrod* opinion, which stated that any interest in marital property vests under Georgia law only upon the filing of a divorce action. *Id.* at 189. Moreover, the Debtor's counsel overlooked *Miller v. Fulton Cnty.*, which states:

> The home in which [the plaintiff] lives is owned by his wife but he argues that his marital status bestows upon him an equitable interest under *Stokes v. Stokes*, 246 Ga. 765, 273 S.E.2d 169 (1980) and its progeny. This argument overlooks the principle that no property rights are created in the assets of a marriage while the parties are still married. *Owens v. Owens*, 248 Ga. 720, 721(1), 286 S.E.2d 25 (1982). That is, "no divorce means no equitable division of property." *Segars v. Brooks*, 248 Ga. 427, 428, 284 S.E.2d 13 (1981). [The plaintiff] has no recognized interest, legal or equitable, in the property where he resides."

258 Ga. 882, 883 (1989). *See also In re McFarland*, No. 11-10218, 2013 WL 5442406, at *6 (Bankr. S.D. Ga. Sept. 30, 2013) ("Because at the time of the transfer Debtor was the sole title holder to the Property, and because the McFarlands are married, the Trustee is correct that Mrs. McFarland had no equitable title to the Property by virtue of marriage."). The Debtor's claim therefore had little chance of success from the outset.

However, the Debtor's claim was not utterly baseless under the law. In her Complaint, the Debtor further relied on *In re Nalley*, 507 B.R. 411 (Bankr. S.D. Ga. 2014), wherein this Court explained that the bankruptcy estate includes "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative." *Id.* at 417. From this expansive definition of "property of the estate" set forth in *Nalley*, the Debtor reasonably argued that the Residence was property of the estate under § 541. The fact that

the Court ultimately disagreed with this argument is not a sufficient basis to impose sanctions under Rule 9011. Accordingly, the Court finds the Debtor's claim was not legally frivolous.

### I. The Debtor's Complaint *Was* Legally Frivolous as to Res Judicata

In its Motion, PIP-East does not seek sanctions for the Debtor's res judicata argument, perhaps because the Debtor's Complaint does not fully articulate this argument. The Court, however, finds that the Debtor's argument *was* frivolous. As set forth above, PIP-East was not bound by the Debtor's confirmed Chapter 13 plan because (1) PIP-East was not a creditor of the Debtor; and (2) the Debtor's plan improperly attempted to bring the Residence, in which the Debtor had no interest on the petition date, into her bankruptcy estate. Therefore, the Debtor's res judicata argument lacked any plausible basis under the law, in violation of Bankruptcy Rule 9011.

### J. The Debtor's Prayer for Relief *Was* Legally Frivolous

Finally, although PIP-East does not seek sanctions for the Debtor's prayer for relief, the Court finds such prayer was, in part, legally frivolous. A party seeking damages for a foreclosure conducted in willful violation of the automatic stay pursuant to § 362(k) often additionally seeks to set aside the foreclosure. *See, e.g., In re Duarte*, BAP No. CC-13-1419-TaDKi, 2014 WL 1466451, at *1 (B.A.P. 9th Cir. Apr. 15, 2014) ("Debtor moved for rescission of the foreclosure and recovery of damages under § 362(k). . . ."); *In re Brown*, 342 B.R. 248, 249 (Bankr. D. Md. 2006). Here, the Debtor sought damages pursuant to § 362(k) and additionally requested "[t]hat Debtor's debt otherwise owed to [Defendants] be extinguished and Defendants be order [sic] to deliver title to the subject real property to

Debtor." (Adv. Dckt. 1, p. 8). This latter requested relief was frivolous for two reasons. First, the Debtor owed no debt to the Defendants with respect to the Residence. Second, the Debtor *never* had title to the Residence in the first place. The Court is unable to determine whether the Debtor sought to set aside the foreclosure and have title put in *her* name or to be awarded the Residence as a measure of damages, but neither remedy was available. Accordingly, this portion of the Debtor's prayer for relief violated Bankruptcy Rule 9011.

## IV. CONCLUSION

PIP-East filed this motion seeking sanctions for the Debtor's allegedly frivolous and improperly-motivated complaint in the adversary proceeding. The Court finds that the Complaint (1) was not filed for an improper purpose; (2) was not factually frivolous; (3) was not legally frivolous as to the Debtor's interest in the Residence; but (4) *was* legally frivolous as to both the Debtor's res judicata argument and the prayer for relief seeking to have title to the Residence put in the Debtor's name.

Despite finding two violations of Rule 9011, the Court declines to impose sanctions in this case. When determining whether to impose a sanction under Rule 9011, a court may consider

> [w]hether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; [and] what amount is needed to deter similar activity by other litigants.

Fed. R. Civ. P. 11 Advisory Committee's Note to 1993 Amendment. The Court has

considered each of the factors described above. The Court finds that the improper conduct which violated Bankruptcy Rule 9011 was the result of negligence and was not willful. Further, the conduct was limited and did not infect the entire pleading. The Court is unaware of the Debtor's counsel having previously engaged in any conduct contrary to Rule 9011. Debtor's counsel has always acted professionally and respectfully in this Court, and asserts well-reasoned, but zealous, arguments on behalf of his clients. This case is not representative of his work. By its express terms, "[a] sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct. . . ." Fed. R. Bankr. P. 9011(c)(2). No sanctions are necessary because the Court believes no deterrence from future violations is needed. Moreover, a court should impose Rule 9011 sanctions only in egregious circumstances. *In re 15375 Memorial Corp.*, 430 B.R. 142, 150 (Bankr. D. Del. 2010). This is not such a case. Accordingly, the Court will deny PIP-East's Motion for Sanctions. A separate order will be entered contemporaneously with this Opinion.

Dated at Savannah, Georgia this 29th day of September, 2017.

Edward J. Coleman, III, Judge
United States Bankruptcy Court
Southern District of Georgia